IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-01479-BNB-MJW

DR. PAUL A. MITCHELL, M.D.,

Plaintiff,

v.

ROCKY MOUNTAIN CANCER CENTERS, LLP,

Defendant.

---

# ORDER

---

This matter is before me on the following motions filed by the defendant:[1]

1. **Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) & (6)** [Doc. # 18, filed 10/1/07] (the "Motion to Dismiss") and the **Memorandum Brief in Support of Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) & (6)** [Doc. #19] (the "Motion to Dismiss Brief"); and

2. **RMCC's Motion for Summary Judgment** [Doc. #55, filed 5/21/08] (the "Motion for Summary Judgment"); and **RMCC's Brief in Support of Motion for Summary Judgment** [Doc. #56, filed 5/21/08] (the "Motion for Summary Judgment Brief").

The Motion for Summary Judgment is GRANTED insofar as it seeks summary judgment in favor of the defendant on the plaintiff's claims for discriminatory discharge and hostile environment and DENIED AS MOOT to the extent it seeks any other relief. The Motion to

---

[1]The Motion to Dismiss was filed on behalf of defendants Rocky Mountain Cancer Centers, LLP; Nicholas DiBella, M.D; and Robert Sayre, M.D. On October 24, 2007, defendants Nicholas DiBella, M.D; Robert Sayre, M.D.; and U.S. Oncology, Inc. were dismissed [Doc. #20]. Therefore, I address only the arguments pertinent to the remaining defendant, Rocky Mountain Cancer Centers, LLP.

Dismiss is DENIED insofar as it seeks dismissal of the plaintiff's Title VII claims as time-barred and DENIED AS MOOT to the extent it seeks any other relief. The plaintiff's age discrimination claim is DISMISSED as withdrawn. The parties shall submit further briefing on the plaintiff's retaliation claim.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, the discovery and disclosure materials on file, and any affidavits the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an

2

essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. UNDISPUTED FACTS[2]

1. On August 19, 2002, the Rocky Mountain Cancer Centers, LLP ("RMCC") hired the plaintiff as a Radiation Oncologist. *Motion for Summary Judgment Brief*, Ex. A, 95:1-3.

2. The plaintiff became a partner at RMCC effective September 1, 2003. Id. at 95:4:7.

3. The plaintiff resigned his employment effective February 6, 2006. Id. at Ex. 16; *Plaintiff's Brief and Affidavit in Opposition to Defendant's Motion for Summary Judgment* [Doc. #59] (the "Response to Motion for Summary Judgment"), Ex. 2.

4. The plaintiff signed a resignation agreement (the "Resignation Agreement" or "Agreement") which provided for severance pay in the amount of $137,500.00 in exchange for a waiver by the plaintiff of claims against RMCC and others. Id.

5. The plaintiff received the severance pay he was promised; he did not make any effort to rescind the agreement; and he never offered to repay the amounts he received. *Motion for Summary Judgment Brief*, Ex. A, 147:14-148:1.

---

[2]In an attempt to dispute the defendant's statements of material facts, the plaintiff makes several factual allegations that are unsupported by evidence. Unsupported factual statements are not sufficient to create material factual disputes. Celotex, 447 U.S. at 324.

The plaintiff filed an unverified Complaint on August 14, 2007. He asserts two claims for relief. Claim One alleges discriminatory discharge, hostile work environment, and retaliation based on race. *Complaint*, pp. 3-6. Claim Two alleges discrimination based on age. Id. at p. 7. The plaintiff seeks two and a half million dollars in damages. Id. at p. 8.

### III.  ANALYSIS

#### A.  Age Discrimination Claim

The defendant asserts that the Court lacks subject matter jurisdiction over the plaintiff's age discrimination claim because the plaintiff did not exhaust administrative prerequisites. *Motion to Dismiss Brief*, pp. 1-4. The plaintiff asserts that exhaustion is not necessary because he "does not claim age discrimination as a reason for his discharge." *Response to Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(B)(1) & (6)* [Doc. #36] (the "Response to Motion to Dismiss"), p. 1. Rather, the plaintiff states that he is alleging that RMCC "violated his rights under the ADEA when they failed to afford him the privileges entitled to him upon service of the termination agreement on February 8th, 2006." Id. I construe the plaintiff's claim to allege a violation of the waiver of rights provisions of the Older Worker Benefits Protection Act, 29 U.S.C. § 626(f)(1) (the "OWBPA"), which sets forth the minimum notice requirements necessary to effectively waive an ADEA claim.

Citing Whitehead v. Oklahoma Gas & Electric Co., 187 F.3d 1184, 1191-92 (10th Cir. 1999), the defendant argues that the plaintiff may not assert a claim for violation of the OWBPA's waiver requirements in the absence of an underlying ADEA claim. *Reply Brief in Support of Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(B)(1) & (6)* [Doc. #37], pp. 2-3. In Whitehead, the circuit court concluded that the district court "properly dismissed Appellants'

4

claim that a violation of the OWBPA, by itself, established age discrimination." 187 F.3d at 1192.

The plaintiff, recognizing the holding in Whitehead, "remove[s]" his age discrimination claim." *Response to Motion for Summary Judgment*, p. 1. Accordingly, the plaintiff's age discrimination claim is DISMISSED as WITHDRAWN.

### B. Timeliness of Filing Race-Based Title VII Claims

The defendant asserts that the plaintiff's Title VII claims are time-barred because the plaintiff did not file suit within 90 days after receiving his Right-to-Sue Notice from the EEOC. *Motion to Dismiss Brief*, p. 5. An employee may file a civil action within 90 days after receipt of a notice of final action taken by the EEOC. 42 U.S.C. § 2000e-5(f)(1). "Compliance with the filing requirements of Title VII is not a jurisdictional prerequisite, rather it is a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling." Million v. Frank, 47 F.3d 385, 389 (10th Cir. 1995).

The defendant argues that the Title VII claims are barred because the plaintiff alleges that he received his Right-to-Sue Notice on April 4, 2007, and he did not file his Complaint until July 13, 2007. *Motion to Dismiss Brief*, p. 5. However, on July 3, 2007, the plaintiff submitted to the Court his initial Complaint [Doc. #3] and a motion for leave to proceed *in forma pauperis* [Doc. #1]. In Jarrett v. US Sprint Communications Co., 22 F.3d 256, 260 (10th Cir. 1994), the circuit court stated that the 90 day limitations period is tolled while a motion to proceed *in forma pauperis* is pending. Thus, the initial Complaint was timely filed with this Court because it was submitted exactly 90 days after receipt of the Right-to-Sue Notice.

The Motion to Dismiss is DENIED insofar as it seeks dismissal of the plaintiff's Title VII claims as time-barred. The Motion to Dismiss contains two additional arguments: (1) the Court lacks subject matter jurisdiction over the plaintiff's age discrimination claim; and (2) the individual defendants must be dismissed because individuals cannot be sued under Title VII. As noted earlier, the age discrimination claim has been withdrawn and the individual defendants have been dismissed. Consequently, these additional two arguments are denied as moot.

### C. Discriminatory Discharge and Hostile Environment Claims

The defendant asserts that the plaintiff's race discrimination claims are barred by the release provisions of the Resignation Agreement. *Motion for Summary Judgment Brief*, p. 8. The terms of the Resignation Agreement require that it be construed in accordance with the laws of the State of Colorado. Colorado courts focus on the plain language of the agreement to determine whether a general release was knowing and voluntary. See USAA Property and Casualty Co. v. Brady, 867 P.2d 203, 205 (Colo. Ct. App. 1993).

However, "in light of the strong policy concerns to eradicate discrimination in employment," I must look beyond the contractual language and consider the following factors to determine whether a general release is knowing and voluntary:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

Torrez v. Public Service Co. of New Mexico, 908 F.2d 687, 689-90 (10th Cir. 1990) (quotations and citations omitted).

The plaintiff does not dispute that he signed the Resignation Agreement. The Resignation Agreement states that the plaintiff has read the Agreement, he understands each of the terms of the Agreement, and he has signed the Agreement willingly and voluntarily. *Motion for Summary Judgment Brief*, Ex. 16 to Ex. A, p. 2, ¶ G; *Response to Motion for Summary Judgment*, Ex. 2, p. 2, ¶ G. In addition, immediately preceding the plaintiff's signature, the Agreement states "I agree to the terms of this letter agreement concerning the resignation of my employment with the Partnership." Id.

The Agreement provides, in part, the following:

> 1. You agree to release the Partnership, its Partner Employees, RMCC Cancer Centers, Inc., a Delaware corporation, US Oncology, Inc., a Delaware corporation, their predecessors, successors, employees, agents and representatives ("the Released Parties"), from any claim you may have relating to your employment or the resignation of your employment with the Partnership.
>
> 2. You agree that this is a release of all claims against the Released Parties, whether or not you know about them or suspect them and whenever they may have happened as long as they happened before you signed this Agreement. These claims include, but are not limited to, claims arising under federal, state and local statutes or regulations as well as any common law, contract or equitable claim.

Id. at pp. 1-2, ¶ C.

The terms of the release clearly and unambiguously include all claims, known and unknown, including claims which arise under federal statutes. The plaintiff states that he is a "well-qualified and competent radiation oncologist." *Complaint*, p. 2. He further states that he

7

"graduated from the University of Chicago radiation oncology residency program and passed the radiation oncology boards on his first attempt." Id. Although the plaintiff's business acumen is unknown, by his own admission he is a very highly educated individual who is capable of understanding the terms of the Resignation Agreement, including the release of his right to sue for employment discrimination under federal statutes. Indeed, the plaintiff does not argue that he did not understand the terms of the Agreement. His only argument is that he was not provided consideration in return for the release of claims.

The Agreement states that the Partnership agreed to pay the plaintiff severance in the amount of $137,500.00. *Motion for Summary Judgment Brief*, Ex. 16 to Ex. A, p. 1, ¶ A; *Response to Motion for Summary Judgment*, Ex. 2, p. 1, ¶ A. The Agreement further states, "You agree that the Partnership is paying you severance in exchange for your release and that, because of your resignation of employment you would not otherwise be entitled to such a payment from the Partnership." Id. at p. 2, ¶ D.

The plaintiff argues that the Agreement did not provide consideration because he was entitled to the $137,500.00 under the following terms of his Physician Employment Agreement:

> Partnership may terminate Physician's employment under this Agreement without cause upon **at least 120 days prior to written notice** ("the Notice Period") ....If Physician's employment is terminated without cause, the Partnership may direct Physician to cease duties hereunder prior to the expiration of the Notice Period (the effective date of the termination being the "Termination Date") ...**Partnership shall pay Physician through the Notice Period that portion of Physician's salary** derived from revenue production....

*Response to Motion for Summary Judgment*, p. 7, ¶24 (emphasis provided by plaintiff).

Without any supporting evidence, the plaintiff concludes that "[i]t is clear from the Termination Letter that the four months (120 days) of the Notice Period was used to arrive at Plaintiff's severance of $137,500. Pursuant to Employment Agreement, Plaintiff was entitled to the $137,500 because RMCC failed to give Plaintiff four months notice before terminating his employment." Id. at ¶ 25.

The plaintiff has failed to create a material fact dispute regarding whether the Resignation Agreement lacked consideration. He does not provide any evidence to show that his employment was terminated without cause and that he was, therefore, subject to the quoted portion of the Physician Employment Agreement. To the contrary, the record establishes that the plaintiff resigned his employment. Moreover, even if he could establish that he was terminated without cause within the meaning of the Physician Employment Agreement, he does not provide any evidence to show that he was entitled to $137,500.00 under the Physician Employment Agreement, *i.e.*, that this amount was "derived from revenue production" "through the Notice Period." On the record before me, the Resignation Agreement provided substantial consideration of severance pay in amount of $137,500.00 in exchange for the plaintiff's general release of possible employment-related discrimination claims.[3]

There is no evidence in the record concerning the amount of time the plaintiff had for deliberation before signing the release, whether he had the benefit of counsel, or whether he had

---

[3]Because I find that the severance pay constitutes sufficient consideration for the release, I do not address the plaintiff's arguments that the defendant's agreement to pay his COBRA premium and waive the non-compete clause of the Physician Employment Agreement did not constitute consideration.

an opportunity to negotiate any of the terms.[4] However, even assuming these factors weigh in favor of the plaintiff, the existing evidence is sufficient to establish that he entered into the agreement knowingly and voluntarily. Consequently, the Agreement bars the plaintiff's claims for discriminatory discharge and hostile environment.

The Motion for Summary Judgment is GRANTED insofar as it seeks judgment in favor of the defendant on the plaintiff's claims for discriminatory discharge and hostile environment.

### D. Retaliation

The plaintiff claims that "RMCC continues to retaliate and discriminate against [him] by refusing to give prospective employers accurate information regarding the plaintiff's credential [sic]." *Complaint,* p. 6. Specifically, the plaintiff asserts:

> Physicians of Center have told the plaintiff and employers that they were told not to give either personal recommendations or references for the plaintiff. The human resource director of RMCC told the plaintiff that while RMCC and US oncology have a policy against giving company letter of recommendations or references, they do not forbid individuals from writing personal letters. In the realm of medicine, where references and recommendations are essential for getting a position, this action is tantamount to blacklisting of the plaintiff.

Id.

The plaintiff's retaliation claim is based on events that allegedly occurred after the plaintiff resigned and is, therefore, not barred by the Resignation Agreement. *Motion for Summary Judgment Brief*, Ex. 16 to Ex. A, pp. 1-2, ¶ C-2; *Response to Motion for Summary Judgment*, Ex. 2, pp. 1-2, ¶ C-2.

---

[4] I note that since July 13, 2007, the plaintiff has filed three civil actions in this Court and that he has proceeded without the benefit of counsel in all three actions.

Only the plaintiff's claim of retaliation based on RMCC's alleged post-release conduct in failing to give prospective employers accurate information remains. Neither party has addressed the merits of that claim, however. Accordingly, I will require the parties to provide additional briefing on that claim.

## IV. CONCLUSION

IT IS ORDERED that the Motion to Dismiss is DENIED to the extent it seeks dismissal of the plaintiff's Title VII claims as time-barred.

IT IS FURTHER ORDERED that the Motion to Dismiss is DENIED AS MOOT insofar as it seeks any other relief.

IT IS FURTHER ORDERED that the plaintiff's age discrimination claim is DISMISSED as withdrawn.

IT IS FURTHER ORDERED that the Motion for Summary Judgment is GRANTED insofar as it seeks summary judgment in favor of the defendant on the plaintiff's claims of discriminatory discharge and hostile environment.

IT IS FURTHER ORDERED that the Motion for Summary Judgment is DENIED AS MOOT to the extent it seeks any other relief.

IT IS FURTHER ORDERED that on or before **September 5, 2008**, the defendant shall submit a supplemental brief which addresses the plaintiff's retaliation claim. The plaintiff shall submit a response brief on or before **October 3, 2008**.

Dated August 5, 2008.

BY THE COURT:

/s/ Boyd N. Boland
United States Magistrate Judge